**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Midmark Corporation,**

      *Plaintiff,*

v.                                                  Case No.  3:14-cv-088
                                                                   Judge Thomas M. Rose

**Janak Healthcare Private Limited, et al,**

      *Defendants.*

**ENTRY AND ORDER ISSUING PRELIMINARY INJUNCTION WHILE ALSO DENYING DEFENDANTS' MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS, LACK OF PERSONAL JURISDICTION AND ON GROUNDS OF FORUM NON-CONVENIENS.** DOC. 16.

      Plaintiff Midmark Corporation has moved the Court for a preliminary injunction to preserve the status quo ante while the Court addresses Plaintiff's petition to compel arbitration. The Court initially questioned its personal jurisdiction over Defendants *sua sponte*, Defendants have now filed a Motion to Dismiss for Insufficient Service of Process, Lack of Personal Jurisdiction and on Grounds of Forum Non-Conveniens. Doc. 16.  The Court will consider Defendants' motion before turning to Plaintiff's preliminary injunction request.

**I.   Background**

      Historically and prior to 2008, Defendants Apurva J. Mehta, Hema A. Mehta, Subir A. Mehta, Hasmukh J. Mehta, Atman Mehta, Amit H. Mehta, Vasant H. Mehta, and Raj H. Mehta;

1

and their family owned all shares of Janak, a company doing business solely in India. (Compl. ¶¶13-15; Apurva Decl. ¶¶2-7).1  In 2007 or 2008, Francois Nogrix, a representative of Midmark, told Apurva that Midmark was seeking to obtain a foothold in the Indian healthcare market. (Apurva Decl. ¶7). In this same time period, Midmark representatives, Nogrix and Richard Bunce, traveled to Mumbai on at least three or four occasions to discuss and review Janak's operations. (Id.) Apurva met with both of them on multiple occasions. (Id.)

Apurva Mehta testified before the Court, however, that for Defendants' part, he came to Ohio to perform due diligence for the whole Mehta family.  He reviewed Midmark's operations and facilities on behalf of all Defendants.

On April 11, 2008 a Share Purchase Agreement was signed between Midmark and Defendants.  Apurva testified before the Court that he and Hashukh signed on behalf of the other Defendants.  On April 28, 2008, the other six Defendants signed this agreement in India. (See Trial ex. 12 and Decl's of Hema, Atman, Subhir, Raj, Vasant, and Amit H.).  It contains an Indian choice of law clause.  Apurva and Hashukh met with Midmark in Ohio and signed the document in Ohio. (Apurva Decl. ¶10).  Midmark thus obtained a minority ownership share in Janak. (Compl. ¶13.)  Since April 2008, Midmark representatives have traveled quarterly to Mumbai.

**II.    Service of Process**

Rule 65(a) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a). This notice requirement implies "a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Amelkin v. McClure*, 1996 WL 8112, *5 (6th Cir. 1996).  The determination of whether a party

---

1 Defendants will frequently be identified by their first name, since all have the same last name.

has received notice of a preliminary injunction sufficient to satisfy Fed. R. Civ. P. 65(a) rests within the discretion of the district court. *Amelkin v. McClure*, 1996 WL 8112, *5 (6th Cir. 1996).

In the instant case, Defendants have actual notice of the action against them, having received a copy of the complaint and all docket entries and having made an appearance for the limited purpose of contesting the Court's jurisdiction. The Mehta Defendants, however, have declined to waive service of process, necessitating compliance with the lengthy procedure the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents established procedure for service of process through the Indian government.

Other courts have recognized the power to order maintenance of the status quo pending service of process under the Hague Convention. See *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 2011 WL 4368418, 1 (E.D. Wis. 2011). Indeed, as the Eastern District of Michigan has noted:

> Ultimately, Defendant wants to have it both ways. It has fully participated in all proceedings to this point and therefore clearly has notice of this action, yet now maintains that the Court cannot extend the TRO due to lack of service. And Defendant refuses to waive service despite its knowledge that service may take three months or more. If Defendant's position were correct, Rule 65 would be inoperable against foreign Defendants. A TRO could not stand for more than 20 days, and a preliminary injunction could not issue until service was perfected under the Hague Convention, a process that can take months. The Court does not believe this result was envisioned or intended by the Federal Rules of Civil Procedure.

*Almetals, Inc. v. Wickeder Westfalenstahl, GMBH*, 2008 WL 624067, *4 (E.D. Mich. 2008). Defendants' motion to dismiss for lack of service of process is denied.

**III.    Personal Jurisdiction**

Defendants likewise assert the action should be dismissed for lack of personal jurisdiction. Plaintiff bears the burden of establishing personal jurisdiction. Defendants have presented evidence supporting their position that Indian courts have a greater claim to personal jurisdiction over the parties, that an Indian court is more capable of interpreting the Indian law the contract stipulates is to be applied to their contract, and that Indian courts are as capable of determining whether the instant dispute is subject to arbitration. The Court suspects that Defendants are correct in all of these contentions. Moreover, the Court is confident that, were Plaintiff to seek recourse before the Honorable Shri Ahok Kumar Tripathi of the Company Law Board of Mumbai, Plaintiff would find justice without fear and favor. These questions, however, are not before the Court.

The question before the Court is whether Defendants have established minimum contacts with the State of Ohio sufficient for them to have anticipated being haled into court here. The Court further notes that Plaintiffs do not request that this Court rule on the merits of the questions before the Company Law Board. The Court understands that no party has requested that the Company Law Board rule on the question of whether the claims in that case are subject to arbitration.

Where, as here, subject matter jurisdiction arises out of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to personal jurisdiction under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process. *Bird v. Parson*, 289 F.3d 865, 871 (6th Cir. 2002) (alterations in original) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

4

In Ohio, personal jurisdiction is proper if: 1) the state long arm statute authorizes jurisdiction; and 2) the exercise of jurisdiction is consistent with the due process requirements of the United States Constitution. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). On a motion to dismiss, the plaintiff bears the burden with respect to both elements. *Nationwide Mut. Ins. Co. v. Tryg Int'l Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). According to the Ohio Long-Arm statute:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;

Ohio Rev. Code. § 2307.382(A)(2). Plaintiff alleges Defendants have violated a contractual agreement to arbitrate disputes arising out of a shareholder agreement to arbitrate any disputes in Singapore. Plaintiff alleges that the shareholder agreement, signed in India by individuals acting in their own capacities and through an agent or by an agent, resulted from a series of contacts with Ohio and lead to a continued series of contacts with Ohio that were more than minimal.

The broad wording of Ohio Rev. Code § 2307.382(A)(1) "permits jurisdiction over nonresident defendants who transact any business in Ohio." *Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc*., No. 3:04-cv-348, 2005 U.S. Dist. LEXIS 32864, at *16 (S.D. Ohio Sept. 7, 2005) (internal quotation marks and citation omitted). "The Ohio Supreme Court has also indicated that the word 'transact' means 'to carry on business,' and 'to have dealings,' and it is broader than the word 'contract.'" *Dayton Superior v. Yan*, 288 F.R.D. at 160-61 (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*, 559 N.E. 2d 477, 480 (1990).

5

A party transacts business in Ohio where it "intentionally and voluntarily" negotiates and signs a contract with an Ohio-based company that "creates ongoing duties and obligations" between the parties, and where both parties seek "the benefit of each other's bargain in hopes of realizing a pecuniary gain[,]." *Kentucky Oaks*, 559 N.E. 2d at 480 ("The fact that [defendant] maintained no physical presence in Ohio does not preclude a finding that it transacted business in this state.") Accord: *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.) ("If . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio."). The same may be true even where the plaintiff initiates contact first. *Directory Concepts, Inc. v. Smith*, No. 3-03-35, 2004 Ohio App. LEXIS 3306, at *10-11 (Crawford Cty. July 12, 2004) (finding jurisdiction over nonresident where Ohio-based plaintiff initiated the contact and signed contract out of Ohio); *Total Quality Logistics v. Best* Plastics, L.L.C., 930 N.E.2d 882, 893 (Clermont Cty. C.P. 2010) (finding personal jurisdiction over a nonresident even though an Ohio-based plaintiff initiated the contact because defendant made repeated telephone calls and email communications with an Ohio company and made payment to Ohio).

Defendants assert that they are not subject to personal jurisdiction because only the Share Purchase Agreement was signed in Ohio, and not the Shareholder Agreement. This ignores that "courts should consider prior negotiations and the parties' course of dealing[.]" *T & W Forge, Inc. v. V & L Tool, Inc.*, No. 05-cv-1637, 2005 U.S. Dist. LEXIS 24619, at *22 (N.D. Ohio Oct. 21, 2005). A party with "contacts, interactions, negotiations and [an] ongoing relationship with an Ohio company . . . cannot legitimately claim that to be haled into court here was either

unforeseeable or unreasonable." *Dominion Liquid Techs., LLC v. Weiss*, No. 1:11-cv-00448, 2012 U.S. Dist. LEXIS 49901, at *14 (S.D. Ohio Apr. 10, 2012).

Defendants have negotiated not just one contract, but a series of agreements with Plaintiff, and have conducted these negotiations through communications with or in Ohio. Defendants knew that Plaintiff was located in Ohio, that the business relationship created a continuing obligation for both parties to act in Ohio, and that Defendants would send and receive money from Ohio. They continued to avail themselves of Midmark's Ohio presence through management needs and sending employees for extended stays. Dr. Klamar Decl., ¶¶ 9 -15. This suffices for a finding of minimal contacts. See *Tharo Sys., Inc. v. Cab Produkttechnik GmbH & Co. KG*, 196 Fed. App'x 366, 368-70 (6th Cir. 2006); see also *Cole*, 133 F.3d at 436 (finding personal jurisdiction over nonresident defendant where parties negotiated contract over telephone, plaintiff executed the contract in Ohio, and defendant had "continuing obligation" to make payments to plaintiff in Ohio).

Here, Defendants acted deliberately in evaluating Plaintiff as a potential partner and negotiating a series of contracts with Plaintiff through communications in or directed at Ohio, and continuing to voluntarily and deliberately seek support and guidance from Ohio. Dr. Klamar Decl., ¶¶ 6-9; *Tharo Sys.,* 196 Fed. App'x at 370 (finding personal jurisdiction in part because defendant "frequently negotiated with [plaintiff] through telephone calls, e-mails, and faxes directed to Ohio"). While Plaintiff may have reached out to Defendants first, Defendants, after having visited Ohio to conduct negotiations and evaluate Plaintiff at its headquarters, deliberately chose to partner with Plaintiff instead of other American or European companies. Dr. Klamar Decl., ¶¶ 4-5, 7. Apurva Mehta testified that he came to Ohio on behalf of the whole Mehta family to do due

7

diligence on Plaintiff. Defendants Apurva and Hasmukh Mehta participated in a presentation to the Midmark board of directors in an effort to sell the "alliance." Id. ¶ 7. Apurva and Hasmukh negotiated in Ohio on their own behalf and as the agents of others, with at least apparent authority that they could negotiate and reach agreement in that capacity. Id. ¶ 8(a); *Weiss*, 2012 U.S. Dist. LEXIS 49901 at *11 (finding personal jurisdiction where defendant sent representative "to lay the foundation for an ongoing business relationship with an Ohio company"). After leaving Ohio, Defendants continued to conduct business with Midmark through visits and communications to Ohio regarding the parties' agreements as well as this dispute. Dr. Klamar Decl., ¶ 9.

The Mehta Defendants argue that some of them are merely passive shareholders in Janak who have never set foot in Ohio; this neither defeats personal jurisdiction, nor prevents equity relief for two reasons. First, a party cannot evade personal jurisdiction only by acting through an agent. *Cooley v. Valero Energy Corp.*, No. 2:11-cv-526, 2012 U.S. Dist. LEXIS 40291, at *22 (S.D. Ohio Mar. 20, 2012) ("A threshold question [for personal jurisdiction], therefore, is whether [third party] was [defendant's] agent (apparent or otherwise)[.]"). Second the proper parties to compel arbitration are the active Mehta family members who hold, or jointly hold, all the non-Midmark shares in Janak.

The passive Mehta shareholders assert that contractual language that no signatory to the agreements is acting as an agent or representative of another in connection with the execution of the various agreements. This language, however, refers to the scope of the actions to form the agreement, and only serves to confirm that each Respondent individually, knowingly and intentionally agreed, inter alia, to binding arbitration as the sole form of dispute resolution. This

language does not negate their minimum contacts with the forum jurisdiction when they authorized the senior family members to travel to Ohio to make commitments on their behalf. After commitments on their behalf were made, the remaining Defendants ratified the agreement that had been negotiated by their family members in the agent capacity, and accepted its benefits. *Stolle Mach. Co. v. RAM Precision Indus.*, No. 3:10-cv-155, 2011 U.S. Dist. LEXIS 144662, at *24 (S.D. Ohio Dec. 14, 2011) (holding personal jurisdiction established where defendant accepted the benefits of the agents' actions and therefore "[defendant] is deemed to have ratified [agent's] conduct"). Defendants benefitted from the continuing obligations established by this business relationship. Plaintiff provided Defendants with additional access to capital and provided professional training to Defendants' less experienced family members – resources Defendants consciously decided could be best obtained through Plaintiff and were not available to them within India. Dr. Klamar Decl., ¶ 4.

Plaintiff transferred more than $3.5 million from its Ohio accounts at the Ohio-based Fifth Third Bank to Defendants in exchange for their shares. Id. ¶ 10. When Janak's CEO Madhu Joshi resigned, Apurva Mehta reached out to Plaintiff for support, and communicated with Plaintiff for guidance while Janak searched for a new CEO. Id. ¶ 12. Plaintiff also loaned an Ohio-based employee to Janak, at Defendants' request, which Apurva received with a "deep sense of gratitude." *Id.*; see *Total Quality Logistics*, 930 N.E.2d at 892 (regarding effect of hosting employee). Plaintiff also drafted letters to help Defendants and their family members travel to the United States in furtherance of the "strategic alliance" between Plaintiff and Janak, envisioning "frequent" visits. Dr. Klamar Decl., ¶¶ 13-14.

Defendants' transactions are properly viewed within the context of the entire business relationship, which all parties intended to be ongoing. *CompuServe, Inc. v. Patterson*, 89 F.3d 12557, 1265 (6th Cir. 1996) (finding personal jurisdiction where "this was a relationship intended to be ongoing in nature; it was not a 'one-shot affair'"); *S. Sys., Inc. v. Torrid Oven Ltd.*, 58 F. Supp. 2d 843, 850 (W.D. Tenn. 1999) ("[W]hen reviewing the existence of specific jurisdiction, the court must examine 'prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)) (emphasis added).  In context, all Defendants transacted business in Ohio, either directly or through agents.

For personal jurisdiction over Defendants to comport with the Due Process Clause, the Court must find: (1) Defendants "purposefully avail[ed] [themselves] of the privilege of acting in [Ohio] or causing a consequence in [Ohio]"; (2) "the cause of action [arose] from the [Defendants'] activities [here]"; and (3) "the acts of the [Defendants] or consequences caused by the [Defendants] . . . have a substantial enough connection with [Ohio] to make the exercise of jurisdiction over [Defendants] reasonable." *Tharo Sys.,* 196 Fed. App'x at 370 (internal quotation marks and citations omitted).

Defendants created a "substantial connection" with Ohio sufficient "that [they] should reasonably anticipate being haled into court [here]." *Burger King Corp.*, 471 U.S. at 474-75 (internal quotation marks and citation omitted).  The defendant does not have to be physically present in the forum state; it is enough that the defendant's actions are directed toward residents of the forum state. *CompuServe, Inc.,* 89 F.3d at 1265.   The "purposeful availment" prong of the Due Process Clause test is co-extensive with the "transacting any business" standard under Ohio's

10

Long-Arm Statute. *Dayton Superior Corp.*, 288 F.R.D. at 164. The Ohio Supreme Court has focused on the parties' entire relationship – not simply any one contract – in determining whether a defendant has minimum contacts with a forum. In *Kentucky Oaks*, the court held that a Georgia-based defendant who signed a lease to use property in Kentucky had minimum contacts with Ohio because it negotiated the lease terms by telephone with the Ohio company, sent the lease to Ohio to be signed, and submitted payments to Ohio. 559 N.E.2d 481-82. Even though the lease contained a Kentucky choice of law provision, the court held that the contacts analysis "depends upon the dealings between the parties prior to and following the document's execution, contemplated future consequences, along with the terms of the contract." 559 N.E.2d at 482 (emphasis omitted).

Defendants have established a "persistent course of conduct in Ohio." *Dayton Superior Corp.*, 288 F.R.D. at 167. Defendants' actions constitute deliberately reaching out to Ohio throughout the years of the relationship either to utilize or to strengthen the parties' strategic alliance. The Letter of Intent, the Share Purchase Agreement, the Shareholder Agreement, Plaintiff's provision of capital, advice, manpower, and resources, and the communications by Defendants toward Ohio constitute purposefully availing themselves of Ohio, rendering personal jurisdiction here is appropriate.

The instant dispute arises from Defendants' contacts with Ohio because Defendants' contacts "'are related to the operative facts of the controversy.'" *Tharo Sys.,* 196 Fed. App'x at 371 (quoting *CompuServe*, 89 F.3d at 1267). The question of whether the dispute arises from the contacts requires the plaintiff to meet only a "'lenient' threshold." *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 222 (6th Cir. 2006). Here, the parties negotiated or signed a series of

agreements in Ohio, culminating in the current Shareholder Agreement under which Defendants sue in India, and which includes the arbitration clause Plaintiff seeks to enforce. All of Defendants' contacts with Ohio, both before and after they signed the Shareholder Agreement, have been in furtherance of the parties' ongoing business relationship. This dispute arises from these contacts, regardless of the fact that Defendants' decision to sue took place in India. *Tharo Sys.,* 196 Fed. App'x at 371 (holding that where the contract was "negotiated and executed by [plaintiff] in Ohio . . . it matters not that the actual breach . . . may have occurred in Germany").

This leaves the Court only to resolve the question of reasonableness. Where the dispute would not exist in the absence of defendant's contacts, "'only the unusual case will not meet th[e] third criterion [of reasonableness].'" *Fortis*, 450 F.3d at 223 (alterations in original) (quoting *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138F.3d 624, 628 (6th Cir. 1998)). In determining whether jurisdiction is reasonable, courts "'consider several factors . . . , including the burden on the defendant, the interest of the forum state, [and] the plaintiff's interest in obtaining relief[.]'" *Tharo Sys.*, 196 Fed. App'x at 372 (omission of text and first alteration in original) (quoting *CompuServe*, 89 F.3d at 1268).

Defendants argue that this court's jurisdiction is unreasonable due to the Indian choice-of-law clause in the Shareholder Agreement. Plaintiff, however, has not asked this Court to adjudicate the underlying dispute; instead, Plaintiff only petitions for the enforcement of the arbitration clause. Although Indian law may govern the substantive rights of the parties, when a request to enforce an arbitration agreement is filed in the United States, federal law governs the question of arbitrability. "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203; See, e.g., *Westbrook Int'l,*

*LLC v. Westbrook Techs.*, 17 F. Supp. 2d 681, 683 (E.D. Mich. 1998) ("[E]ven in international agreements, the [Federal Arbitration Act] governs the arbitrability of claims and choice-of-law clauses will be applied to the substantive aspects of the arbitration proceedings.").

While Defendants assert that the claims they have brought of majority shareholder abuse of minority rights are non-arbitrable under Indian law, and Plaintiff asserts they are arbitrable, Under United States law, the arbitrator initially determines arbitrability, and an aggrieved party can contest arbitrability when the prevailing party seeks to enforce the award. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995). Ultimately, Plaintiff seeks only compelled arbitration. If Plaintiff is ultimately successful, Defendants will be burdened only with arbitrating this matter in their chosen forum – an arbitral forum selected in the Shareholder Agreement for Defendants' convenience. Likewise, Plaintiff seeks to have an arbitrator selected by the parties -- and not this Court --will be entrusted with interpreting and applying Indian law.

## IV. Forum Non-Conveniens

Defendants would also have the Court dismiss the instant case on the basis of forum non-conveniens. Defendants have contractually waived this position, however, as the Shareholder Agreement states that the parties may seek equity relief "any court of competent jurisdiction in order to preserve the status quo pending resolution of the dispute at issue through arbitration." Doc. 1-2, at 37.

## V. Preliminary Injunction Analysis

The standard for determining whether to issue a preliminary injunction involves the examination of: (1) the likelihood of plaintiff's success on the merits; (2) whether or not the injunctive relief will save plaintiff from irreparable injury; (3) whether or not the injunctive relief

will harm others; and (4) whether or not public interest will be served by the injunction. See *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).   These factors are not prerequisites, but elements balanced by the Court. *Frisch's Restaurants, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985) and  *DeLorean Motor Co.*, 755 F.2d at 1229.  This portion of the Court's analysis being relatively straightforward, the Court will briefly evaluate each of these factors.

**A.      Likelihood of Prevailing on the Merits**

Plaintiff seeks an order that Defendant arbitrate the claims it has brought before the Company Law Board in Mumbai India.  Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.   The FAA embodies "the strong federal policy in favor of enforcing arbitration agreements" and "ensure[s] judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 219   (1985) (enforcing agreement to arbitrate); see also *Haskins v. Prudential Ins. Co. of Am.,* 230 F.3d 231, 239, 241 (6th Cir. 2000)(enforcing arbitration agreement).

The FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds*, 470 U.S. at 221.   "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218, 105 S. Ct. at 1241 (emphasis in original).  The mandatory provisions of the FAA do not permit parties to an arbitration agreement "to ignore the contract and resort to the courts.   Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to

eliminate." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984) (enforcing agreement to arbitrate in franchise agreement).

The (1958 New York) Convention on the Recognition and Enforcement of Foreign Arbitral Awards, a United Nations treaty, respecting the rights to enforce arbitration among foreign nationals also mandates that district courts direct the parties to proceed to arbitration where a written arbitration agreement governs commercial disputes. Article II, Section 3 of the treaty provides that "'when one of the parties' to [an] arbitration agreement requests a court refer the dispute to arbitration, that court 'shall' do so." *Answers in Genesis of Kv., Inc. v. Creation Ministries Int'l, Ltd.,* 556 F.3d 459, 468-69 (6th Cir. 2009) (citing Convention art. II(3); 9 U.S.C. § 208). The Sixth Circuit has observed that: "there is nothing discretionary about Article II(3) of the Convention. The language of the treaty and its statutory incorporation provide for no exceptions. When any party seeks arbitration, if the agreement falls within the convention, we must compel the arbitration unless the agreement is 'null and void, inoperative, or incapable of being performed.'" *Answers in Genesis*, 556 F.3d at 469 (affirming grant of motion to compel arbitration; rejecting arguments regarding "comity concerns," reasoning that "it is difficult to see how comity concerns could come into play where both Australia and the United States, as signatories to the Convention, apply the same law .... To assume that the district court's order infringes on comity concerns is to assume that Australian courts would not follow their obligation under the Convention, as C1VII's argument must rest upon an assumption that an Australian court would be less likely to order arbitration. Such an argument both demeans the foreign tribunal and hardly advances the comity interests that CMI claims to seek to vindicate")

Both India and the United States are signatories to the Convention. *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 950-51 (S.D. Ohio 1981) ("The Convention is a United Nations treaty to which the United States became a party in December 1970. India ratified the treaty in 1961. Legislation implementing the Convention is codified in Chapter 2 of Title 9 of the United States Code."). The Convention as codified, at 9 U.S.C. § 203, provides district courts of the United States with subject matter jurisdiction over actions or proceedings falling under the Convention.

The Shareholders Agreement contains the following provision for settling by arbitration disputes arising between the parties, as follows:

> Any dispute, controversy, or claim arising out of or relating to this Agreement or the breach, termination of invalidity thereof, shall be resolved exclusively by binding arbitration (the "Arbitration") conducted before a sole arbitrator (the "Sole Arbitrator") in Singapore, pursuant to the rules of and administered in accordance with the rules of London Court of International Arbitration (the "LCIA"). The language of the Arbitration shall be English. Each party involved in such Arbitration shall pay its own legal fees and expenses in connection with Arbitration and the persons involved therein shall share equally the fees and expenses of the LCIA and the Sole Arbitrator. The Sole Arbitrator shall be an attorney mutually agreed upon by the Parties to the Arbitration or, if no agreement can be reached, to be determined by the LCIA. All Arbitration proceedings and sessions shall be private and confidential, and no one other than the Parties and their legal representatives may attend without the consent of the other Party or by an order of the Sole Arbitrator. All information disclosed in the course of any and all Arbitration proceedings and sessions shall be maintained in strict confidence except to the extent disclosure of any such information is required by law. The prevailing Party shall be entitled to any appropriate relief (including monetary damages, if any), as well as reimbursement of all its actual costs (including sole arbitrator's fees and fees payable to the LCIA) and its attorneys' fees, from the opposing Party. The decision of the Sole Arbitrator and any award pursuant thereto, shall be final, binding and conclusive on the Parties and will not be appealable on its merits.

> Final judgment on any such decision or award may be entered by any court of competent jurisdiction. The Parties waive any objection to this arbitration on grounds that such a proceeding is an inconvenient or inappropriate forum to settle any such dispute. Notwithstanding anything to the contrary, stated in this Section 10.1, the Parties hereby agree that Part I of the Arbitration and Conciliation Act, 1996, shall not be applicable to this Agreement in any way whatsoever, and none of the parties shall have the right to enforce any of their rights under Part I of the Arbitration and Conciliation Act, 1996.

Doc. 1 at 6.

The dispute Defendants filed in India arises from the Shareholder agreement. See Doc. 1-4, esp. at 10. It is likely that Plaintiffs will prevail in their request that arbitration be ordered.

**B.      Whether the Injunctive Relief Will Save Plaintiff from Irreparable Injury**

The irreparable injury question is met as a matter of law. If a party must undergo the expense of trial, the anticipated advantages of arbitration—speed and economy—are lost. *Zaborowski v. MHN Government Services, Inc.*, 2013 WL 1832638, 2 (N.D. Cal. 2013) (citing *Alascom, Inc. v. ITT North Elec. Co.,* 727 F.2d 1419, 1422 (9th Cir. 1984)). While Defendants assert that Plaintiff can enjoy arbitration while the litigation in India progresses, this would deprive Plaintiff of the benefit of their bargain.

**C.      Whether the Injunctive Relief Will Harm Others**

There is no assertion that others would be harmed by an injunction.

**D.      Whether or Not Public Interest Will Be Served by the Injunction**

"[T]here is a strong public policy in favor of carrying out commercial arbitration when a contract contains an arbitration clause." *Safelite Group, Inc. v. Zurich American Ins. Co., Inc*., 2012 WL 3224104, *8 (S.D. Ohio 2012) (citing *Performance Unlimited v. Questar Publishers*, 52

F.3d 1373, 1384 (6th Cir. 1995))  "'Arbitration lightens courts' workloads, and it usually results in a speedier resolution of controversies.'" *Id.* (quotation omitted).

## VI. Conclusion

The Court does not intend to disparage the Company Law Board in any manner.  While it appears that Plaintiff might have brought its arbitration request to the Company Law Board and possibly received the same relief, the question before this Court is whether Plaintiff is entitled to bring that question before this Court.  It appears it may.

Because Defendants have established minimal contacts such that a reasonable person would anticipate being exposed to legal process in Ohio and because Defendants have contractually waived their right to assert forum non-conveniens, Defendants' motion to dismiss on those bases is **DENIED**.  Because Plaintiff has established a likelihood that it will prevail on its motion to compel arbitration, because Plaintiff will suffer irreparable harm in the form of litigation without extraordinary relief, because an injunction will not cause substantial harm to others and because enforcing arbitration agreements is in the public interest, the Court hereby converts its temporary restraining order into a preliminary injunction.  Defendants are **ENJOINED** from pursuing their action before the Company Law Board until this Court rules on Plaintiff's motion to compel arbitration, which this Court will do immediately upon notice that Defendants have been served under the Hague Convention or have waived service of process.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, April 16, 2014.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE